IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LIONEL L.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23 C 11667 |
| v. | ) | |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| MICHELLE A. KING, | ) | |
| Acting Commissioner of Social Security,[2] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**[3]

Before the Court is Lionel L.'s memorandum in support of reversing or remanding the Commissioner's decision denying his application for Social Security disability benefits (D.E. 13) and Defendant's motion to affirm the Commissioner's decision (D.E. 18).

**I.     Procedural History**

Plaintiff applied for disability insurance benefits ("DIB") on April 8, 2019.[4] (R. 15, 2549.) In January 2021, after a hearing, a (different) ALJ denied Plaintiff's application, finding Plaintiff was not disabled between his alleged onset date ("AOD") of October 27, 2012, and the date last

---

[1] The Court in this order is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Michelle A. King for her immediate predecessor, Carolyn W. Colvin, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On January 3, 2024, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 11.)

[4] Plaintiff's initial alleged onset of disability date was August 26, 2008, which he first amended to October 27, 2012 (R. 15) and subsequently amended to June 12, 2013. (R. 2535-36.)

insured ("DLI") of December 31, 2012.[5] Plaintiff appealed, which ultimately led to an agreed remand by the district court in April 2022. (R. 12-33; 2626-28.) In its remand order, the Appeals Council ("AC") vacated the final decision, determining that the prior ALJ did not adequately consider the issue of borderline age,[6] and improperly established the DLI without reviewing a complete record of Plaintiff's earnings. (R. 2631-32.) The AC directed the ALJ to (1) give further consideration to Plaintiff's earning records and DLI; (2) give further consideration to the issue of borderline age, if necessary; and (3) if warranted, obtain supplemental vocational testimony to determine Plaintiff's occupational base. *Id*.

Subsequent to the AC's remand order, Plaintiff amended the AOD to June 12, 2013, his 55th birthday, thus removing the borderline age issue. (R. 2535, 2562.) Updated earnings records were provided to the ALJ, updating the DLI from December 31, 2012, to December 31, 2013. (R. 2535-36, citing R. 2759-62.) Therefore, the amended application presented a very narrow question of whether Plaintiff was disabled during the roughly six-month period from June 12, 2013, to December 31, 2013.

After remand, on February 7, 2023, Plaintiff and a vocational expert ("VE") testified at a hearing before the current ALJ. (R. 2556-90.) On May 18, 2023, the ALJ issued a written decision denying Plaintiff's application, finding him not disabled under the Social Security Act (the "Act").[7] (R. 2532-2555.) This appeal followed.

---

[5] To be entitled to DIB, a claimant must prove that their disability onset date preceded the DLI. *See Martin v. Kijakazi*, 88 F.4th 726, 728 (7th Cir. 2023), citing 42 U.S.C. § 423(c).

[6] Plaintiff was less than six months away from turning 55 years old as of the prior December 31, 2012, DLI. (R. 2535.) After Plaintiff amended the AOD to June 12, 2013, his 55th birthday, the consideration of borderline age issue was no longer necessary as Plaintiff was in the advanced age category from the AOD of June 12, 2013, to the DLI of December 31, 2013. (*Id*.)

[7] On September 13, 2023, after the ALJ's decision became final, Plaintiff filed this civil action in federal district court. *See* R. 2533: "If you do not file written exceptions and the Appeals Council does not review

**II.     The ALJ Decision**

The Administrative Law Judge ("ALJ") applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity from his AOD of June 12, 2013, through his DLI of December 31, 2013. (R. 2538.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of arthritis and degenerative joint disease.[8] *Id*. As to Plaintiff's mental impairments of depression, anxiety, and post-traumatic stress disorder, the ALJ determined they were non-severe. (R. 2538.) The ALJ found Plaintiff had only mild limitations in all four of the "Paragraph B" functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (R. 2539.) At Step Three, the ALJ found that Plaintiff's impairments alone or in combination did not meet or medically equal any Listing. (R. 2540.) The ALJ assessed Plaintiff as having the ability to perform light work "with exceptions" and assigned Plaintiff a residual functional capacity ("RFC") as follows:

> occasionally balance, kneel, crouch, crawl, climb ramps and stairs, and climb ladders, ropes, or scaffolds; no excessive noise; no prolonged exposure to high concentration of odors, fumes, and gases; no unprotected heights.

(R. 2541.)

---

my decision on its own, my decision will become final on the 61st day following the date of this notice. After my decision becomes final, you will have 60 days to file a new civil action in Federal district court."

[8] The previous ALJ determined in her January 29, 2021, decision at Step Two that Plaintiff had the severe impairments of migraines, arthritis of the hands, degenerative joint disease of the knees bilaterally, obesity, depression, anxiety, and post-traumatic stress disorder. (R. 17, 29.)

At Step Four, the ALJ found that Plaintiff was capable of performing his past relevant work as a telephone solicitor, order clerk, and deputy coroner (R. 2548.) Thus, the ALJ determined that Plaintiff was not disabled under the Act. (R. 2548.)

## III. Legal Standard

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054. The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted).

The Seventh Circuit has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's

4

determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

IV. **Analysis**

Plaintiff contends the ALJ erred in three aspects in rendering the decision: (1) the ALJ failed to support his finding, at Step 2, that Plaintiff's mental impairments are not severe; (2) even assuming that Plaintiff's mental impairments are not severe, the ALJ failed to properly assess the effects of those impairments, combined with other severe physical impairments, on his RFC; and (3) the ALJ failed to include proper accommodations for limitations arising out of Plaintiff's numerous physical impairments. (D.E. 13: Pl. Mem. in Supp. Of Reversing or Remanding Comm'r's Dec. ("Pl. Mem.") at 7.) As noted above, the relevant period for purposes of the ALJ's decision and this Court's review is a short time frame of roughly six months, from June 12, 2013, (AOD) to December 31, 2013 (DLI). With this six-month time frame in place, the Court renders its decision. The Court reviews the record only as relevant to its decision.

A. **The ALJ's Step 2 Determination that Plaintiff's Mental Impairments Were Not Severe During the Relevant Period Was Supported by Substantial Evidence.**

Plaintiff was involved in a serious motor vehicle accident in Germany in 1979 while working as a military police investigator. (R. 700, 1944.) He alleges that since that accident, he has re-experienced the trauma with nightmares and flashbacks. (Pl. Mem. at 9, citing R. 686, 2503.) Plaintiff contends that the ALJ erred by not adopting the first ALJ's determination in January 2021, that Plaintiff's mental impairments of depression, anxiety, and post-traumatic stress disorder were severe. (Pl. Mem. at 2 n.2, 6 n.3, 6, 8, citing R. 17-18, 20-21.)

But the first ALJ opinion assessed whether Plaintiff was disabled during a completely different time period, between October 27 and December 31, 2012, and the AC vacated and

5

remanded that opinion pursuant to Sentence Four of 42 U.S.C. § 405(g), meaning that the second ALJ is not bound by any findings in the first decision. *Jennifer C. v. Saul*, No. 18 C 1243, 2019 WL 4345344, at *5 (N.D. Ill. Sept. 12, 2019). By contrast, the second ALJ assessed whether Plaintiff was disabled from June 12 to December 31, 2013, and although the evidence may support more than one conclusion, the case must be affirmed if it was supported by substantial evidence. *See Brumbaugh v. Saul,* 850 F. App'x 973, 977 (7th Cir. 2021) (ALJ not required to explain what changed between first and second decision; issue is whether second decision is supported by substantial evidence).

An impairment is severe when it "significantly limits an individual's physical or mental ability to perform basic work activities." (R. 2538, citing 20 C.F.R. 404.1520(c), 404.1509.) A claimant's mental impairments are generally not severe at Step 2 if the limitations are rated "none" or "mild" in the so-called Paragraph B criteria. C.F.R., Part 404, Subpart P, App. 1; 20 C.F.R. 404.1520a(d)(1). Here, the ALJ determined that Plaintiff's medically determinable impairments of depression, anxiety, and PTSD, considered singly and in combination, did not cause more than minimal limitation in his ability to perform basic mental work activities. (R. 2538.) In doing so, the ALJ determined that Plaintiff had a mild limitation in each of the Paragraph B functional areas. Plaintiff takes issue with the ALJ's assessment of his ability to interact with others and his ability to concentrate, persist, or maintain pace. (Pl. Mem. at 10.)

In his analysis of interacting with others, the ALJ noted Plaintiff's indication that he had a problem with other people, preferred to be alone, and claimed to have no social activities. (R. 2539.) The ALJ also acknowledged Plaintiff's reported (from his 2020 function report) mood swings with homicidal ideation, and that he did not get along with authority figures. (*Id.,* citing R. 329-43.*)* The ALJ found these allegations inconsistent with Plaintiff's ability to go outside alone,

to shop in stores such as Walmart, and to attend a concert with his spouse. (*Id.*, citing R. 332, 2577.) The ALJ also noted that exams in June and October 2013 by Plaintiff's psychiatrist, Jadwiga A. Kuszynska, M.D., revealed Plaintiff's eye contact was intact, his speech was sometimes intact, and at times he was hypo-verbal.[9] (*Id.*, citing R. 1379, 1395.) The ALJ also discussed Plaintiff's hearing testimony denying "significant mental health treatment in 2013" (the time frame at issue) indicating that he had only gone to a few group therapy sessions at the VA and would just receive medication refills when he saw his treatment provider, Dr. Kuszynska, once every two or three months in 2013. (R. 2543, citing R. 2556-90, specifically R. 2578.) As the ALJ's analysis reflects, the assessment of a mild limitation in Plaintiff's ability to interact with others was the result of the ALJ comparing Plaintiff's subjective statements against the objective medical record, including Plaintiff's overall conservative course of treatment. Such comparison revealed Plaintiff's statements were inconsistent with and unsupported by the medical record.

Plaintiff, in essence, asks the Court to reweigh the evidence, but the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez*, 96 F.4th at 1021 (internal quotations omitted). Furthermore, despite bearing the burden to establish disability, *Combs v. Kijakazi*, 69 F.4th 428, 434 (7th Cir. 2023), all Plaintiff points to during the relevant time period in 2013 to support his argument is that his mood was down, and he was experiencing insomnia and low energy at his June and October 2013 appointments with Dr. Kuszynska. (Pl. Mem. at 12.) The Court was able to follow the ALJ's reasoning which satisfies the articulation requirements. *Warnell*, 97 F.4th at 1053. Accordingly, even if reasonable minds could differ as to the ALJ's assessment of Plaintiff's

---

[9] Despite Plaintiff's insistence that "homicidal ideation raises a red flag" (Pl. Mem. at 10), these June and October 2013 reports, relied upon by both the Plaintiff and the ALJ, state that Plaintiff experienced no suicidal or homicidal thoughts during the relevant time period. (*See, e.g.*, R. 1379-80, 1395-96.)

mild limitation in interacting with others, the ALJ's assessment here was supported by substantial evidence. *See Zoch v. Sauls*, 981 F.3d 597, 602 (7th Cir. 2020).

Plaintiff also disagrees with the ALJ's determination of mild limitations in concentrating, persisting, or maintaining pace, and, in doing so, Plaintiff relies heavily on the 2020 assessment of his treating psychiatrist since December 2010, Dr. Kuszynska, who endorsed "dire" limitations in all areas of mental functioning, and whose opinion the ALJ ultimately found to be unpersuasive. (Pl. Mem. at 10-12; R. 2547.) Under 20 C.F.R. § 404.1520c, the most important factors for the ALJ to evaluate in determining the persuasiveness of medical opinion evidence are the supportability and consistency both internally and with the record as a whole. The ALJ must also consider the treating practitioner's relationship with the claimant, specialization, as well as other factors, but an explanation of the ALJ's consideration of these additional factors does not need to be presented within the ALJ's opinion. 20 C.F.R. § 404.1520c(b)(2).

Here, the ALJ reviewed Dr. Kuszynska's form, which "contained unusual language not consistent with the Social Security Act" and determined that Dr. Kuszynska's reported extreme psychological limitations were "not consistent with the very minimal, conservative treatment in the record," finding his opinion not persuasive. (R. 2547.) *See, e.g., Chambers v. Saul*, 861 F. App'x 95, 101 (7th Cir. 2021) (finding ALJ properly discounted opinions of treating therapist and treating psychiatrist as inconsistent with plaintiff's "relatively conservative" treatment of weekly psychotherapy sessions, medication management with a psychiatrist, and on the report of thoughts of self-harm and worsening depression, plaintiff was neither prescribed a significantly more aggressive treatment plan nor admitted to a hospital); *Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) (finding ALJ entitled to consider that treatment was conservative in determining claimant was not disabled). For instance, the ALJ pointed out that Plaintiff was not getting ongoing therapy,

8

but rather only receiving refills of his medication. (R. 2547.) The ALJ explained that Dr. Kuszynska's form was completed in October 2020, but it was unclear if the doctor was considering evidence and treatment beyond the Plaintiff's DLI of December 31, 2013. *Id*. The ALJ also noted that Plaintiff's treatment in 2013 "mainly just mentioned feeling down, stressed, and having some insomnia" but did not document the extreme limitations or symptoms Dr. Kuszynka alleged. *Id*. The ALJ also considered the opinions of the two State agency psychological consultants, who both found insufficient evidence to even assess the impact of Plaintiff's mental health impairments prior to the DLI, and found these opinions not persuasive, noting that while Plaintiff received fairly conservative psychological treatment, there was sufficient evidence to at least evaluate his impairments. (R. 2546.)

Although the ALJ acknowledged that Plaintiff alleged that he would bore quicky and not finish things, he also noted that Plaintiff would watch television, listen to music, and could focus enough to drive and manage his own money. (R. 2539, citing R. 332.) Further, the ALJ pointed to a 2011 neuropsychological examination showing he had average functioning in psychomotor skills, attention, and concentration (R. 2539, citing R. 519) and a June 27, 2013, examination showing Plaintiff's attention and concentration were intact. (R. 2539, citing R. 1395.) Plaintiff bears the burden to establish disability, *Combs*, 69 F.4th at 434, and Plaintiff fails to identify any "evidence-based restrictions that the ALJ could include in a revised RFC finding on remand." *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). All Plaintiff points to during the relevant time-period is Dr. Kuszynska's June 27 and October 3, 2013, notes that "Plaintiff's mood was down, and that he was experiencing insomnia and low energy." (Pl. Mem. at 12, citing R. 1379, 1390, 1395.) The ALJ took this into account and discussed it in his analysis (R. 2547), but ultimately determined Plaintiff's cited evidence was not enough to meet Plaintiff's burden.

9

Often, conflicting evidence in these types of cases could support reasonable decisions to grant or deny benefits, but it is not the Court's place to re-weigh the evidence. *Chavez*, 96 F.4th at 1021. Here, the ALJ's Step 2 determination that Plaintiff's mental impairments were not severe during the relevant time frame was supported with substantial evidence.

> **B. The ALJ's Decision Not To Include Limitations in Mental Functioning in the RFC Was Supported By Substantial Evidence.**

Plaintiff next argues that even if the ALJ properly found that his mental impairments were not severe at Step 2, the ALJ failed to assess properly the effects of his mental impairments, combined with his severe physical impairments, in determining his RFC. (Pl. Mem. at 12.) An ALJ's RFC assessment must incorporate all of Plaintiff's limitations supported by the medical record, 20 C.F.R. § 404.1545, and conversely, the RFC need not include limitations that are not supported by the record. Here, the ALJ noted that his RFC assessment includes consideration of "all of the claimant's impairments, including impairments that are not severe." (R. 2537 (citations omitted).) But there is no requirement that restrictions from non-severe impairments must be included in the RFC assessment. *See, e.g.*, *Felts v. Saul*, 797 F. App'x 266, 268-70 (7th Cir. 2019) (upholding ALJ's finding that plaintiff was not limited to simple instructions in the RFC where ALJ determined at Step 2 that plaintiff's depression was not severe, and the Paragraph B criteria showed only mild limitations). Here, the ALJ determined that Plaintiff's non-severe mental impairments did not lead to functional limitations, and he supported this determination with substantial evidence, as outlined below.

Not only did the ALJ discuss Plaintiff's mental impairments at Step 2, the ALJ discussed in greater detail both Plaintiff's physical and mental impairments in the RFC section of his analysis. (R. 2541-47). In particular, the ALJ discussed Plaintiff's mental impairments as follows:

10

- Plaintiff's indication that he had difficulty with memory, completing tasks, concentrating, following instructions, and getting along with others. (R. 2543, citing R. 326-43.)

- Plaintiff's indication that he had a problem with people and preferred to be alone, that he reported having mood swings with homicidal ideation, that he did not follow spoken instructions well but followed written instructions better, he did not get along with authority figures, he claimed not to handle stress or changes in routine well, that he would get bored quickly and not finish things. (R. 2543, citing R. 326-43, R. 362-71.)

- Plaintiff's denial of having significant mental health treatment in 2013, indicating he only attended a "few group therapy sessions" and would see his treatment provider "just [for] medication refills." (R. 2543, citing R. 2556-90.)

- Plaintiff's day-to-day activities included spending time watching television and listening to music, sleeping two to three hours at night, checking the doors all night and sleeping with the lights on, needing reminders to take care of his personal needs and take his medications, preparation of simple meals, doing a variety of chores with his spouse's encouragement, driving and going out alone, shopping in stores like Walmart, going to a concert with his wife in 2015, and managing his own money. (R. 2543, citing R. 326-43 and R. 2556-90.)

- Plaintiff's spouse's third party-function report in 2020 describing Plaintiff's health issues (both physical and mental) as getting worse, but noting her description of symptoms would not necessarily reflect his functioning during the relevant period in 2013 prior to the DLI. (R. 2543, citing R. 303-14.)

- The two State agency psychological consultants both finding insufficient evidence to assess the impact of Plaintiff's medically determinable mental health impairments prior to the DLI. (R. 2546, citing R. 167-79, 181-94.)

- Plaintiff's Global Assessment of Functioning (GAF) scores and finding the GAF scores not persuasive. (R. 2546-47.) *see Price v. Colvin*, 794 F.3d 836, 839 (7th Cir. 2015); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (GAF no longer widely used).

- Dr. Kuszynska's 2020 mental functioning form that the ALJ described as not consistent with Social Security Act and that rated Plaintiff as a "category III" (precludes performance for 10% of an 8-hour workday) or "category IV" (precludes performance for 15% or more of an 8-hour workday). The ALJ considered Dr. Kuszynska's opinion that Plaintiff had poor tolerance to heat, sensitivity to noises, poor concentration, hypervigilance, startle reaction, and anxiety problems. (R. 2547.)

11

The ALJ evaluated Dr. Kuszynska's opinion of extreme psychological limitations and determined that the opinion was inconsistent with and unsupported by the very minimal, conservative treatment in the record. (R. 2547.) The ALJ explained that Plaintiff was not receiving ongoing therapy, was just receiving refills of his medication, and had not required inpatient psychiatric care. *Id*. Although Dr. Kuszynska claimed the limitations existed since 2008, the form was completed in 2020, making it unclear to the ALJ whether the doctor was considering evidence and treatment beyond the 2013 DLI. *Id*. The ALJ also discussed Dr. Kuszynska's lack of citation to specific findings in the medical record to support the limitations or document the alleged symptoms. *Id*. This concern is relevant to this particular fact pattern as the doctor's form spanned 12 years, while the relevant time period at issue before the ALJ spanned a mere six months. Lastly, the ALJ's evaluation focused on the treatment during the relevant six-month time frame in 2013 that merely mentioned feeling down, stressed, and having some insomnia, but that did not document the extreme limitations or symptoms alleged by Dr. Kuszynska in his 2020 report. *Id*.

Reading the ALJ's opinion holistically, the ALJ discussed and provided an in-depth analysis of Plaintiff's non-severe mental impairments and mild limitations in formulating the RFC, and thus the ALJ's determination to not include non-exertional limitations in the RFC was supported by substantial evidence. *Zellweger v. Saul*, 984 F.3d 1251, 1252, 1254-55 (7th Cir. 2021).

**C. The ALJ Properly Included Accommodations for Plaintiff's Physical Impairments in the RFC.**

Plaintiff claims that the ALJ "provided little more than a perfunctory explanation" and cherry-picked pieces of evidence supporting a finding of no disability. (Pl. Mem. at 14.) Specifically, he takes issue with the ALJ "barely" mentioning Plaintiff's neck and arm issues, and with the ALJ's having failed to include accommodation for his documented difficulties with hand

12

use. *Id*. But Plaintiff bears the burden to establish disability, *Combs*, 69 F.4th at 434, and Plaintiff fails to identify any "evidence-based restrictions that the ALJ could include in a revised RFC finding on remand." *Jozefyk*, 923 F.3d at 498.

As discussed above, the ALJ's articulation requirement is minimal, *Warnell*, 97 F.4th at 1053, and the ALJ's decision, including his six-page RFC analysis, met that requirement. (R. 2541-47.) The ALJ determined that Plaintiff's arthritis and degenerative joint disease were severe impairments. (R. 2538.) The ALJ also comprehensively discussed Plaintiff's variety of symptoms including the cramping of his hands, neck pain, arm pain, and knee surgeries. (R. 2543-43.) The RFC was supported by substantial evidence.

Plaintiff again is asking the Court to do the impermissible – to re-weigh the evidence with regard to his hand use. The ALJ recognized Plaintiff's complaints of cramping, that his "hands were hard to use" (R. 2542) and that he sometimes had trouble using buttons and zippers. (R. 2543.) But the ALJ weighed that against Plaintiff's ability to do a variety of chores like laundry, sweeping, vacuuming, dusting and mopping. (R. 2543.) The ALJ discussed the August 2011 X-rays of the right hand that "showed mild degenerative joint disease of the fifth finger and the rest of the hand and a swan neck deformity of one finger." (R. 2544.) He further noted records from January 2013 where Plaintiff reported some cramping in the hand and snapping at the PIP joint, but had no pain, could make a full fist and fully extend all of his fingers. *Id*. The ALJ noted that Plaintiff was fitted with a splint for his right finger, and with good functioning, there was no need for surgical correction. *Id*. Based on this review of the record, the ALJ concluded that activities of daily living were inconsistent with allegations of functional limitations; and that the medical evidence showed that Plaintiff had "some orthopedic issues with his hands, but had good functioning with his hands, being able to make a full fist and fully extend his fingers and not

13

require surgical intervention." (R. 2547.) Plaintiff bears the burden and points to no evidence involving surgical intervention for the right hand. Plaintiff's claim of cherry-picking evidence (Pl. Mem. at 14) is unsubstantiated, as the ALJ discussed and recognized Plaintiff's "cramping in the hand and snapping at the PIP joint." (*Compare* Pl. Mem. at 15 *with* R. 2544.) The Court will not entertain what amounts to Plaintiff's request to re-weigh the evidence.

Plaintiff also takes issue with the ALJ's finding that Plaintiff recovered well from his right knee surgery prior to the alleged onset date and underwent minimal treatment for the pain in his left knee claiming he had not "improved enough" to sustain full-time employment. (Pl. Mem. at 15, citing *Murphy v. Colvin*, 759 F.3d 811 (7th Cir. 2014).) Once again, Plaintiff bears the burden, and his blanket statement without citation to evidence that he had "difficulties with both knees during the relevant period" does not meet that burden. Moreover, the ALJ supported his determination of Plaintiff's physical limitations with substantial evidence, providing a detailed analysis of Plaintiff's successful knee surgeries (July 2011 and October 2012), recovery, and significant pain relief with minimal treatment such as corticosteroid injections (January and August 2013) and over-the-counter BC Powder (pain reliever). (*Compare* Pl. Mem. at 15 *with* R. 2544-45, 2547.) The Court finds "no error in the ALJ's assessment" where he "considered all limitations supported by record evidence." *Jozefyk*, 923 F.3d at 497.

14

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion seeking to reverse and remand the ALJ's decision (D.E. 13) and grants Defendant's motion to affirm (D.E. 18).

**SO ORDERED.**

                **ENTER:**

                *[signature]*

                **GABRIEL A. FUENTES**
                **United States Magistrate Judge**

**DATED: February 10, 2025**